IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| KRISTEN RENSING | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. 1: 20-CV-03547-ADC |
| | * | |
| WALMART, INC. | | |
| | * | |
| Defendant | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Defendant Walmart, Inc. ("Walmart" or "Defendant") submits this memorandum in support of its Motion for Summary Judgment in this diversity action for negligence brought by Plaintiff Kristen Rensing ("Plaintiff"). There exists no genuine dispute of material fact and Plaintiff cannot meet her burden to show any breach of Walmart's duty to Plaintiff as a business invitee, and therefore Walmart is entitled to summary judgment as to all of Plaintiff's claims.

**I.     INTRODUCTION**

Plaintiff claims she slipped and fell on wet floor just inside the interior of the Ellicott City Walmart store. However, there is no objective evidence, beyond Plaintiff's specious and self-serving testimony, that there was any liquid on the floor and in fact the store surveillance video, which captured the incident, shows that she twisted her ankle on her own high-heeled shoe. Assuming *arguendo* the existence of liquid on the floor, there is no evidence that Walmart had either actual or constructive notice of any liquid. Accordingly, and for the reasons that follow, Walmart is entitled to summary judgment as a matter of law.

1

## II.     UNDISPUTED FACTS

On Saturday, January 4, 2020, at approximately 10:00 a.m., Plaintiff and her husband, Christopher Rensing ("Mr. Rensing"), went to the Ellicott City, Maryland Walmart store to buy a card on their way to a wedding.  *See Deposition of Plaintiff Kristen Rensing*, attached as Exhibit 1, at 28:5-29:13.  Mr. Rensing waited in the car while Plaintiff went into the store.  *Id.* at 29:14-18.  Plaintiff was dressed for the occasion, wearing a knee-length dress and black sling-back heels that were ½" – 1" high.  *Id.* at 30:10-21.  Plaintiff testified that it was "drizzling" or "misting rain" when she went to Walmart.  *Id.* at 35:5-10.  She did not use an umbrella or wear a raincoat.  *Id.* at 36:21-37:2.  She did not remember seeing any puddles of water outside the store and did not remember her feet being wet when she entered the store.  *Id.* at 36:8-17.  She walked through the store vestibule without incident, walked several steps into the store interior, and fell.  *Id.* at 38:5-40:2.  The area where she fell was well lit and there was nothing obstructing Plaintiff's view as she entered the store.  *Id.* at 41:2-7.

Plaintiff did not see anything on the floor either in the vestibule or store interior before she fell.  *Id.* at 38:9-39:7, 40:6-9.  She did not see any customers tracking water into the vestibule, and did not know whether the vestibule floor was wet in any way.  *Id.* at 39:8-13.  She testified that after she got up from the floor, she looked at her leg and noticed it was wet, then looked at the floor.  *Id.* at 41:17-21, 45:10-18.  She testified that the floor "looked wet, glistening."  *Id.* at 42:2-3.  However, Plaintiff could not describe what she saw by size, shape or amount, but testified that it was a clear liquid, was not dirty, and she did not see any footprints, track marks, or trail of liquid.  *Id.* at 42:6-43:16.  She did not know where the clear liquid came from or how long it had been there.  *Id.* at 43:17-44:1.  She did not see any Walmart associates in the immediate vicinity at the time of her incident.  *Id.* at 44:15-20.  She did not see anyone clean up anything on the floor after

her incident. *Id.* at 48:7-12. The first associate on scene to assist Plaintiff, Jeanette Sanchez, did not observe any water on the floor. *See Affidavit of Jeanette Sanchez*, attached as Exhibit 2. Plaintiff did not say anything to Ms. Sanchez about water on the floor. *Id.* Mr. Rensing, who had been waiting in the car, came into the store after a member of store personnel located him outside and advised that Plaintiff fell. *See Deposition of Christopher Rensing*, attached as Exhibit 3, at 15:6-9. While he was in the store with Plaintiff after the incident, he did not observe any water on the floor. *Id.* at 18:15-18.

Store surveillance video footage captured Plaintiff's occurrence. *See store surveillance video*, attached as Exhibit 4. In fact, the video demonstrates that Plaintiff actually twists her ankle on her own high-heeled shoe, as her foot neither slides out in front or behind her, but rather turns out to the right. *Id.* (*see* timestamp 10:05:28). No liquid or other foreign substance is visible on the floor, either before or after Plaintiff's incident. *Id.* Numerous customers enter the store prior to Plaintiff, none of whom appears to be using an umbrella, and no one slips or falls walking over the same area where Plaintiff alleges she slipped. *Id.* After Plaintiff's fall, customers continue to walk over the area. *Id.* No one reacts to or cleans up anything on the floor. *Id.* Approximately twenty minutes after the fall, an associate uses a broom and dustpan to sweep the entry area, including where Plaintiff fell. *Id.* (*see* timestamp 10:21:28). A broom and dustpan are used to clean up dry dirt and debris, not a wet substance. *See Deposition of Walmart's Corporate Designee*, attached as Exhibit 5, at 25:9-22. Had there been a wet spill, the associate in the video would have used a mop or a squeegee, which are maintained in a "spill station" at the service desk, approximately 15 feet from where Plaintiff fell. *Id.* at 26:1-15.

All Walmart personnel undergo training on safety policies and procedures. *See* Ex. 5 at 30:22-31:2. These trainings are conducted both upon initial hiring as well as repeatedly during the

course of employment. *Id.* at 31:3-20. All store associates and managers are trained to look for and correct any known hazards on the floor. *Id.* at 29:9-30:1. With regard to spill clean-up policies and procedures, Walmart trains and expects its associates to promptly clean up known spills, or to stand and guard the spill until help can be called. *Id.* at 29:17-30:1. During wet weather, the store deploys mats in the vestibule to catch water tracked in, as well as blower fans to help dry the floor, and associates would mop up wet floors as needed. *Id.* at 17:8-12, 26:19-21, 27:10-15. None of these measures are visible in the store video at the time of or prior to Plaintiff's incident. *Id.* at 27:16-18.

Discovery is now closed. For the reasons argued below, there exists no genuine dispute of material fact and Plaintiff is unable to demonstrate that Walmart breached any duty to Plaintiff. Accordingly, Walmart is entitled to summary judgment as a matter of law.

### III.   STANDARD OF REVIEW

Fed. R. Civ. Proc. 56 governs summary dispositions and provides, in pertinent part, that summary judgment shall be granted if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. Proc. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To meet its burden, the movant must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant makes his or her showing, the burden shifts to the non-moving party to identify with specificity the material facts within the record that are disputed. Fed. R. Civ. Proc. 56(a); *Anderson* 477 U.S. at 252; *Celotex Corp.*, 477 U.S. at 322-23. To do so, Plaintiff must present more than mere conjecture or speculation. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## IV.     ARGUMENT

This diversity action for negligence is governed by Maryland law. *See Erie R.R. Co. v. Thompkins*, 304 U.S. 64 (1938).  Plaintiff bears the burden to establish sufficient facts to prove each of the elements necessary to make out a prima facie negligence case.  *See Peterson v. Underwood*, 258 Md. 9, 15 (1970) ("It is fundamental that in a negligence action the plaintiff has the burden of proving all the facts essential to constitute the cause of action.").  "Any theory of liability sounding in negligence is predicated on the existence of the following elements: '(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty."  *Warr v. JMGM Group, LLC*, 433 Md. 170, 181 (2013) (quoting *Valentine v. On Target, Inc.*, 353 Md. 544, 549 (1999)).

Under Maryland law, "a proprietor of a store owes a duty to his [or her] customers to exercise ordinary care to keep the premises in a reasonably safe condition." *Moulden v. Greenbelt Consumer Services, Inc.*, 239 Md. 229, 231-32 (1965).  The store, however, "**is not an insurer of the safety of his [or her] customers while they are on the premises and no presumption of negligence on the part of the owner arises merely from a showing that an injury was sustained in the store**." *Id.* (emphasis added).  Thus, in order to demonstrate a breach of duty, plaintiff must present evidence to show: "(1) that the storeowner had actual or constructive notice of a condition which created an unreasonable risk of harm to the invitee, (2) that the storeowner should have anticipated that the invitee would not discover the condition or realize the danger, or would fail to protect herself from the danger, and (3) that the storeowner failed to take reasonable means to make the premises safe or to give adequate warning of the condition to the invitee." *Lloyd v. Bowles*, 260 Md. 568, 572–73 (1971) (*citing Gast, Inc. v. Kitchner*, 247 Md. 677, 685

(1967); Restatement (Second) of Torts § 343 (1965)). "[A]n entity charged with failing to maintain premises in a reasonably safe condition is entitled to summary judgment in its favor if it neither created nor actually knew of the hazard, and if there is no evidence showing that the hazardous condition existed long enough for that party to remedy the hazard or warn of its existence." *Zilichikhis v. Montgomery Cty.*, 223 Md. App. 158, 187 (2015); *see also Deering Woods Condo. Ass'n v. Spoon,* 377 Md. 250, 265, 833 A.2d 17, 25 (2003) (affirming summary judgment in favor of condominium association where association had no actual or constructive notice of icy conditions that caused plaintiff to fall and sustain injuries).

    A.   **THERE EXISTS NO *GENUINE* DISPUTE OF MATERIAL FACT AS TO THE CONDITION OF THE FLOOR.**

Plaintiff's claims in this case rest on her testimony that she slipped on clear liquid on the floor. However, Plaintiff has presented no objective evidence of that purported fact. In fact, the objective evidence, specifically the store surveillance video, conclusively demonstrates that the floor was **not** wet. *See* Ex. 4. The video does not show any liquid or other foreign substance on the floor, either before or after Plaintiff's incident. *Id.* Numerous customers enter the store prior to Plaintiff. *Id.* There is no evidence that any of those people tracked water on the floor, nor does anyone appear to drop or spill anything. *Id.* No one appears to be using an umbrella or otherwise reacting to rainy conditions, such as shaking off water. *Id.* Multiple customers walk directly over the same area where Plaintiff fell, but no one slips, falls, or otherwise reacts to anything on the floor. *Id.* The video does not show any person cleaning up a wet spill on the floor. *Id.* Approximately twenty minutes after the fall, an associate uses a broom and dustpan to sweep the entry area, including where Plaintiff fell. *Id.* (*see* timestamp 10:21:28). A broom and dustpan are used to clean up dry dirt and debris, not a wet substance. *See* Ex. 5 at 25:9-22. Had there been a wet spill, the associate in the video would have used a mop or a squeegee, which are maintained

in a "spill station" at the service desk, approximately 15 feet from where Plaintiff fell. *Id.* at 26:1-15.  In sum, nothing in the video indicates any liquid on the floor at any time. *See* Ex. 4.  In fact, the video demonstrates that Plaintiff actually twists her ankle on her own high-heeled shoe. *Id.* (*see* timestamp 10:05:28).

In addition, Jeannette Sanchez, the first associate to respond to Plaintiff's incident, did not observe water or other foreign substance on the floor. *See* Ex. 2.  Plaintiff did not say anything to Ms. Sanchez about water on the floor, nor did any Walmart associate say anything to Plaintiff about any water on the floor. *Id.*; *see also* Ex. 1 at 47:13-48:4.  Plaintiff's husband, who was called into the store shortly after Plaintiff's incident, did not observe any water on the floor. *See* Ex. 3 at 18:15-18.  There were no reports of water on the floor or any other customer accidents prior to Plaintiff's alleged incident. *See* Ex. 2.  If any associate had seen or known about any liquid on the floor, per store protocol the associate should have promptly cleaned it up or guarded the spill until help can be called. *See* Ex. 5 at 29:17-30:1.

Although Plaintiff testified that she looked at the floor after she fell and saw that it "looked wet, glistening," she could not describe the clear liquid by size, shape or amount. *Id.* at 42:2-3, 42:18-43:5. Standing alone without any objective supporting evidence (and in the face of objective evidence that refutes her testimony), her self-serving testimony is insufficient to create a genuine dispute of fact to overcome summary judgment.  This court has observed that a party's "self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment." *Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004).  "Although [the court] do[es] not make credibility determinations at the summary judgment phase, [the court] should also not find a genuine dispute of material fact based solely on [plaintiff's] self-serving testimony." *Harris v. Home Sales Co.*, 499 F. App'x 285, 294 (4th Cir. 2012).  It is well established that, for purposes of

summary judgment, "bare allegations unsupported by legally competent evidence do not give rise to a genuine dispute of material fact." *Solis v. Prince George's Cty.*, 153 F. Supp. 2d 793, 807 (D. Md. 2001)). Discovery is now closed. There is no objective evidence to support Plaintiff's self-serving testimony that the floor was wet. Plaintiff cannot demonstrate a *genuine* dispute of material fact, as the only purported dispute of fact demonstrated in the above recitation of facts is the self-serving testimony of the Plaintiff, not supported by any objective, competent evidence or grounded in any reasonable basis on which a jury could find for the Plaintiff. Accordingly, there is no genuine dispute of fact that there existed any dangerous or defective condition, and Walmart is entitled to summary judgment.

### B. ALTERNATIVELY, WALMART IS NOT LIABLE FOR PLAINTIFF'S INJURIES BECAUSE IT HAD NO ACTUAL OR CONSTRUCTIVE NOTICE OF THE EXISTENCE OF ANY DANGEROUS OR DEFECTIVE CONDITION.

Assuming *arguendo* that the floor was wet as alleged by Plaintiff, Walmart is still entitled to summary judgment because there is no evidence of actual or constructive notice. In a premises liability case, to sustain a cause of action against a business proprietor, a plaintiff "must prove not only that a dangerous condition existed but also that the [proprietor] had actual or constructive knowledge of the dangerous condition." *Richardson v. Nwadiuko*, 184 Md. App. 481, 495, 966 A.2d 972, 980 (2009) (quoting *Joseph v. Bozzuto Mgmt. Co.*, 173 Md. App. 305, 315, 918 A.2d 1230 (2007)); *see also Rehn v. Westfield America*, 153 Md. App. 586, 593 (2003). Maryland courts have explained that notice is absolutely necessary and paramount to prove negligence in a premises liability case because "[to do] away with the requirement that the invitee must prove how long the dangerous condition existed pre-injury is the functional equivalent of doing away with the requirement that the plaintiff prove that the defendant's negligence was the proximate cause of the plaintiff's injury." *Maans v. Giant of Md. LLC*, 161 Md. App. 620, 632-33, 640 (2005).

> **1. Walmart neither created nor had actual notice of the alleged clear liquid on the floor.**

There is no evidence whatsoever that any Walmart personnel created the alleged hazard or that any Walmart personnel had actual knowledge of the existence of any liquid on the floor prior to Plaintiff's fall. The store surveillance video does not show the alleged clear liquid on the floor or any source thereof. In her deposition, Plaintiff testified that she did not know who or what caused the clear liquid to be on the floor or how long it had been on the floor before her incident. *See* Ex. 1 at 43:20-44:1. The store video does not show any associate respond or react to anything on the floor prior to (or after) Plaintiff's alleged incident. *See* Ex. 4. If any associate had seen it, per Walmart policy, he or she should have stopped to clean it up or guarded the area until help could be called to clean it. *See* Ex. 5 at 29:17-30:1. On these facts, there exists no evidence upon which a reasonable juror could conclude that Walmart either created or had actual knowledge of the alleged liquid on the floor, therefore there exists no genuine dispute of material fact on that point.

> **2. There is no evidence as to how long the alleged hazardous condition existed before Plaintiff's fall, therefore, Plaintiff cannot establish constructive notice.**

In order to prove constructive knowledge, the plaintiff must demonstrate **how long** the dangerous condition existed, and that it existed **long enough** to permit the defendant to discover the condition. *See Lexington Market Auth. v. Zappala*, 233 Md. 444, 446, 197 A.2d 147, 148 (1964) ("[T]he burden is upon the customer to show that the proprietor created the dangerous condition or had actual or constructive knowledge of its existence."); *Montgomery Ward & Co. v. Hairston*, 196 Md. 595, 598-99, 78 A.2d 190 (1951) (holding that the evidence was "legally insufficient to support an inference of constructive notice" where plaintiff, who slipped on an unknown substance, could not say that the substance was placed there by employees of defendant,

that its presence was known to them, or that it was there for an appreciable time before the accident). Maryland courts have held that "time on the floor" evidence is necessary to prove constructive notice in a premises liability case, explaining that "[to do] away with the requirement that the invitee must prove how long the dangerous condition existed pre-injury is the functional equivalent of doing away with the requirement that the plaintiff prove that the defendant's negligence was the proximate cause of the plaintiff's injury." *See Maans v. Giant of Md. LLC.*, 161 Md. App. 620, 632-33, 640 (2005).

There is no bright line time limit as to how much time is "appreciable" for purposes of establishing constructive notice. "What will amount to sufficient time depends upon the circumstances of the particular case, and involves consideration of the nature of the danger, the number of persons likely to be affected by it, the diligence required to discover or prevent it, opportunities and means of knowledge, the foresight which a person of ordinary care and prudence would be expected to exercise under the circumstances, and the foreseeable consequences of the conditions." *Moore v. Am. Stores Co.*, 169 Md. 541, 182 A. 436, 440 (1936). Unsurprisingly, Maryland state and federal courts have found that intervals of a few minutes are not long enough to establish constructive knowledge in premises liability cases. *See, e.g.*, *Page v. Supervalu, Inc.*, No. WGC-14-1508, 2015 U.S. Dist. LEXIS 38198 (D. Md. 2015) ("[A] five minute interval is not an appreciable length of time for Supervalu to discover and remove a single grape from the floor."); *Spence v. Wal-Mart Stores East, LP*, No. WGC-13-1895, 2014 U.S. Dist. LEXIS 133143 (D. Md. 2014) (six minutes); *Rehn v. Westfield America*, 153 Md. App. 586 (2003) (four minutes). In cases where actual "time on the floor" evidence is not available, Maryland courts have also held that constructive notice is not established where there is evidence showing that the substance was on the floor for some period of time **less than a few hours**. *See, e.g., Montgomery Ward*, 196 Md. at

190; *Moulden*, 239 Md. at 233 (up to 2.5 hours); *Zappala*, 233 Md. at 445 (up to 2 hours). This is consistent with the above cited and well-recognized principle in Maryland that a shopkeeper is under **no duty to continuously inspect its premises**.

Without "time on the floor" evidence, Plaintiff cannot meet her burden to establish constructive notice. For example, in *Moulden v. Greenbelt Consumer Services, Inc.*, the Court of Appeals affirmed the trial court's granting of a motion for directed verdict at the conclusion of the plaintiff's case based on its conclusion that no reasonable juror could find that the defendant store owner had either actual or constructive notice of any dangerous condition prior to plaintiff's accident. In that case, the plaintiff alleged she slipped on a green bean on the floor of a dry goods aisle in the defendant's grocery store. 239 Md. at 231. The plaintiff could not demonstrate any actual time on the floor evidence, but argued based on evidence of the appearance of the green bean (namely, that it was "smashed" and discolored), it must have been on the floor for some length of time. *Id.* at 231. For the defense, the store manager "testified that he inspected the aisles periodically and had examined the aisle in which the accident occurred sometime after 3:30 p.m. on the day of the accident[,]" approximately two and a half hours prior to the plaintiff's slip and fall incident. *Id.* Not knowing how long the green bean had been present on the floor, and even if it had been there for up to two hours, the Court of Appeals upheld the trial court's granting of defendant's motion for directed verdict, explaining that the store "is not an insurer and we think it would be unreasonable to hold that it is his duty to conduct a continuous inspection tour of the store." *Id.*

Similarly, in *Richardson v. Nwadiuko*, 184 Md. App. 481 (2009), the Maryland Court of Special Appeals affirmed summary judgment in favor of the defendant property owner in a "rainy day" slip and fall negligence case. In that case, the plaintiff and her husband entered their doctor's

11

office building via a door that opened directly from the exterior into the doctor's waiting room. *Id.* at 484. At the time of their arrival, it was raining heavily and had been raining steadily since the night before, including at 9:00 a.m. when the doctor entered the building, approximately two hours before the Plaintiff. *Id.* at 485. As the plaintiff stepped through the door and onto the tile floor inside the building, which was not covered by any mat, she slipped and fell. *Id.* at 486. After she fell, she observed water on her pants and hands, but did not know whether the water came from her shoes, clothing, or the tiled floor. *Id.* She did not know how much water was in the area or how long it had been there. *Id.* On these facts, the appellate court concluded that there was no evidence of any notice, actual or constructive, of the water on the floor to the defendant and therefore affirmed summary judgment. *Id.* at 497.

In so holding, the Court of Special Appeals in *Richardson* relied on another rainy day case out of Virginia, *Ashby v. Faison & Assocs., Inc.*, 440 S.E.2d 603 (1994). In *Ashby*, the plaintiff entered an office building on a rainy day. *Id.* at 604. There was a mat on the floor just inside the door covering the marble floor of the lobby. *Id.* The plaintiff walked the length of the rain mat, which she described as "soaked with water," then slipped and fell on "puddles of water" on the marble floor, which she did not see before she fell. *Id.* On the day of the plaintiff's incident, a porter dry mopped the lobby at 7:00 a.m., approximately one hour and forty-five minutes before the plaintiff's occurrence, but was not present at the time of the incident and there were no caution cones in the area. *Id.* There was no other evidence that any person, including the plaintiff, actually knew about the water on the floor before the incident. *Id.* at 605. On these facts, the appellate court affirmed a directed verdict in favor of the defense, concluding that there was no evidence "that the defendants actually knew of the existence of a hazardous condition before [plaintiff] fell

or that the condition had existed long enough that the defendants should have known of its existence in time to remove it or to warn [plaintiff] of the danger." *Id.*

In this case, Plaintiff has presented no "time on the floor" evidence whatsoever, and thus there exists no evidence sufficient to demonstrate constructive knowledge. The store video does not show the clear liquid on the floor or its source. Plaintiff testified that she did not know who caused the liquid to be on the floor or how long it had been there before her incident. *See* Ex. 1 at 43:17-44:1. Although she could not describe what she saw by size, shape or amount, Plaintiff testified that the clear liquid was not dirty and she did not see any footprints, track marks, or trail of liquid. *Id.* at 42:6-43:16. In other words, it is entirely unknown when or how the alleged clear liquid came to be on the floor. Accordingly, there is no genuine dispute of material fact on the issue of constructive notice and Walmart is entitled to summary judgment.

### 3. There is no evidence that Walmart failed to take necessary precautions or conduct reasonable inspections.

Furthermore, there exists no evidence that Walmart failed to conduct reasonable inspections or take necessary precautions to combat the alleged wet weather conditions. Walmart maintains and enforces "good housekeeping" policies to ensure its floors are clean and safe for customers, which in fact belies any potential argument from Plaintiff that Walmart failed to conduct reasonable inspections that led to Plaintiff's occurrence. The undisputed evidence in this case is that Walmart trains and expects its associates to clean up known spills promptly, or to stand and guard the spill until help can be called. *See* Ex. 5 at 29:9-30:1. All Walmart personnel undergo training on safety policies and procedures, both upon initial hiring as well as repeatedly, at least twice per year, during the course of employment. *Id.* at 30:22-31:20. All store associates and managers are trained to look for and correct any known hazards on the floor. *Id.* at 29:9-30:1. To assist in prompt clean-up of spills, the store maintains "spill stations" with clean-up supplies in

13

strategic locations throughout the store, including next to the customer service desk a short distance from where Plaintiff's incident occurred. *Id.* at 26:1-15. In addition, during wet weather events, the store deploys mats in the vestibule to catch water tracked in, as well as blower fans to help dry the floor, and associates would mop up wet floors as needed. *Id.* at 17:8-12, 26:19-21, 27:10-15. On these facts, no reasonable juror could find that Walmart fails to take adequate precautions or make reasonable inspections of its stores to ensure the safety and comfort of its patrons.

In the context of rainy days, courts from other jurisdictions have held that "[t]o require a merchant to keep the entrance/exit areas completely dry during rainy weather, or to hold the merchant responsible for every slick place due to tracked in rain water would, in effect, make him an insurer of his customer's safety." *Turner v. Brookshire Grocery Co.*, 785 So. 2d 161, 164 (La. App. 2001); *see also Faircloth v. United States*, 837 F. Supp. 123, 128 (E.D.N.C. 1993) ("It is not the duty of persons in control of such buildings to keep a large force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas[.]") (*quoting S.S. Kresge Co. v. Fader*, 116 Ohio St. 718, 158 N.E. 174, 175 (1927)). The rationale from these cases is consistent with Maryland's well establish principles that a shopkeeper is not an "insurer" and has no duty to continuously inspect its premises.

For all of these reasons, there exists no genuine dispute of material fact as to whether Walmart had actual nor constructive notice of the clear liquid on the floor prior to Plaintiff's occurrence. Without evidence of actual or constructive notice, Plaintiff cannot demonstrate that Walmart breached its duty to "keep the premises in a reasonably safe condition" and therefore cannot make out a prima facie negligence case. *Moulden*, 239 Md. at 232. To hold otherwise would be to impose upon Maryland business owners, such as Walmart, a duty to continuously inspect the premises (and thereby make store owners the insurer of their patrons' safety), a premise

which Maryland courts have flatly (and repeatedly) rejected. *Id.* Accordingly, Walmart is entitled to summary judgment as a matter of law.

### C. ALTERNATIVELY, WALMART IS NOT LIABLE FOR PLAINTIFF'S INJURIES BECAUSE THE ALLEGED WET FLOOR WAS OPEN AND OBVIOUS AND PLAINTIFF WAS CONTRIBUTORILY NEGLIGENT.

It is well established that contributory negligence is an affirmative defense and completely bars a plaintiff's recovery in an action for negligence in Maryland. *See Harrison v. Montgomery County Bd. of Educ.*, 295 Md. 442 (1983); *Warsham v. James Muscatello, Inc.,* 189 Md. App. 620, 639 (2009). "It is a fundamental principle of negligence law that a person must use his Providence-given senses to avoid injury to himself." *Southern Maryland Electric Cooperative, Inc. v. Blanchard*, 239 Md. 481, 485 (1965). "[C]ontributory negligence arises from the failure of the plaintiff to use due care to avoid dangers . . . which he should know exist . . . because the dangers are so obvious that any ordinarily prudent man would see them and guard against them." *Texas Co. v. Washington, B. & A. E. R. Co.*, 147 Md. 167, 174 (1925). The Court of Appeals has held that a plaintiff "who either did not look when he should have, or did not see when he did look . . . requires the finding that he was contributorily negligent as a matter of law." *Schmidt v. Greyhound Corp.*, 228 Md. 15, 17 (1962) (barring recovery for pedestrian struck by a car because he failed to look both ways before crossing the street). In other words, when "a person of ordinary intelligence, with unimpaired eyesight, [ ] says that he did not see an object which, had he used his senses, he, in the nature of things, must have seen . . . the law . . . charge[s] him with such knowledge." *Blanchard*, 239 Md. at 485. Summary judgment in favor of the defendant raising a defense of assumption of risk or contributory negligence is appropriate "where it is clear that any person of normal intelligence in the plaintiff's position must have understood the danger." *Poole v. Coakley & Williams Constr., Inc.*, 423 Md. 91, 109 (2011).

To the extent Plaintiff argues that it was raining at the time of her incident and Walmart should have had mats on the floor to prevent rainwater from being tracked in, it necessarily follows that Plaintiff should have used ordinary care to guard against potential wet conditions since she knew it was raining. Furthermore, wet floor in the entryway of the store during a rain event is an open and obvious condition, and not a condition that Walmart "should have anticipated that Plaintiff would not discover the condition or realize the danger, or would fail to protect herself from the danger." *See Lloyd v. Bowles, supra.* "Everybody knows that, when people are entering any building when it is raining, they will carry some moisture on their feet, which will render the floor near the door on the inside damp to some extent, and every one knows that a damp floor is likely to be a little more slippery than a dry floor." *Faircloth v. United States*, 837 F. Supp. 123, 128 (E.D.N.C. 1993).

Although Maryland state courts have not addressed whether standing water on a floor during a rain event is open and obvious as a matter of law, the Fourth Circuit Court of Appeals, in an unpublished case out of Virginia, which also applies the doctrine of contributory negligence, has held that "it is reasonable to hold that [a] plaintiff should have been on the look out for a wet floor immediately inside the front of the store when it had been raining all day," as "[p]atrons in a store are not allowed to be oblivious to the state of their environment." *Newcomb v. Food Lion*, 94 F.3d 642 (Table), 1996 WL 469902, at *2 (4th Cir. Aug. 20, 1996) (unpublished), attached as Exhibit 6. In that case, the plaintiff slipped and fell immediately inside the entrance of a Food Lion grocery store. *Id.* at *1. The plaintiff testified that it had been raining all day and that "she was also aware that water is often tracked indoors when it rains." *Id.* at *1. However, the plaintiff did not look at the floor when she entered the store, slipped and fell. *Id.* After her fall, she noticed wet foot prints on the floor. *Id.* The Fourth Circuit affirmed the trial court's granting of summary

16

judgment in favor of Food Lion on the grounds that "the wet floor immediately inside the front door of the store, on a rainy day and evinced by footprints, was an open and obvious hazard that every reasonable person would have noticed and avoided." *Id.* at *2.  The court also held that "[a]s a matter of law, the [p]laintiff should have been on guard for a wet floor, evinced by footprints, on a rainy day in an area directly inside the entrance to the store. Because the plaintiff failed to look out for her own safety, the [p]laintiff was contributorily negligent as a matter of law under the specific facts presented here." *Id.*

Likewise, in this case, assuming *arguendo* that it was raining at the time of the alleged incident, Plaintiff was on notice of the potential for wet conditions and should have used due care, especially in light of her chosen footwear, a pair of sling-backed high heels, a type of shoe held in place by a single strap around the back of the heel that is inherently unsecure and that Plaintiff rarely wears.  In this case, Plaintiff did not see any footprints or track marks on the floor.  *See* Ex. 1 at 42:6-43:16.  However, she testified that it was raining when she arrived.  *Id.* at 35:5-10. Therefore, it is entirely possible that Plaintiff herself had wetness on her shoes, which contributed to her fall.  In addition, review of the store video demonstrates that Plaintiff likely twisted her ankle on her own shoe, which she testified she wore only a few times prior to the incident.  *Id.* at 33:7-17.  For all of these reasons, Plaintiff is barred from recovery based on her contributory negligence.

## V.     CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant Walmart, Inc. respectfully prays this Honorable Court to grant this Motion for Summary Judgment, and for such further relief as justice may require.

                Respectfully submitted,

                */s/ Jennifer M. Alexander*
                Jennifer M. Alexander
                jalexander@mhlawyers.com
                Fed. Bar No.:  15222

                */s/ Kelly S. Kylis*
                Kelly S. Kylis
                kkylis@mhlawyers.com
                Fed Bar. No.:  14126

                **MCNAMEE HOSEA, P.A.**
                888 Bestgate Road, Suite 402
                Annapolis, Maryland 21401
                410-266-9909
                *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that, on this 25th day of August, 2021, a copy of the foregoing was electronically filed and served via the Court's CM/ECF Systems upon:

  Mark Rosasco, Esquire
  Hyatt & Weber P.A.
  200 Westgate Circle, Suite 500
  Annapolis, Maryland 21401
  *Attorneys for Plaintiff*

                */s/ Jennifer M. Alexander*
                Jennifer M. Alexander, Esquire